**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
VINCENT MASINO, *et al.*,

                                Plaintiffs,

                  -against-

AGGREGATES PLUS LTD.

                                Defendant.
-----------------------------------------------------------X

**REPORT & RECOMMENDATION**

11-CV-00449 (FB)(RER)

**RAMON E. REYES, JR., U.S.M.J.:**

Vincent Masino, Keith Loscalzo, Francisco Fernandez, Philip A. Faicco, James Kilkenny and Anthony Robibero, trustees of the Pavers and Road Builders District Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Training Funds[1] (collectively, "Plaintiffs") allege that Aggregates Plus Ltd. ("Aggregates") violated the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.*, by failing to make contributions pursuant to the terms of their collective bargaining agreement (the "CBA"). The Honorable Frederic Block referred plaintiffs' motion for default judgment to me for a report and recommendation on the issue of liability and damages. (Dkt. Entry, 4/13/2011.) For the reasons that follow, I respectfully recommend that a default judgment be entered against Aggregates in the amount of $27,522.80.

---

[1] The Pavers and Road Builders District Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Training Funds are collectively referred to hereafter as the "Funds."

**BACKGROUND**

Aggregates entered into a CBA with the Highway Road and Street Construction Laborers Local Union 1010 of the District Council of Pavers and Road Builders of the Laborers' International Union of North American AFL-CIO (the "Union"). (Compl. ¶ 5; Exh. A.)[2] Plaintiffs are trustees of the Funds, which are multiemployer benefit funds within the meaning of ERISA, providing welfare, pension, and annuity benefits to Union members. (Compl. ¶¶ 1, 4.); *see also* ERISA, 29 U.S.C. § 1002(3). Pursuant to the CBA, Aggregates is required to make scheduled contributions to the Funds for hours worked by Union employees.[3] (Compl. ¶ 5; Exh. A, Article IX.) In the event Aggregates fails to make contributions, the CBA requires Aggregates to pay the unpaid contributions, as well as interest, attorney's fees and liquidated damages. (Compl. ¶¶ 16-18; Exh. A, Article IX § 5.) An audit of shop steward reports conducted by Funds Administrator Joseph Montelle indicated that from July 2009 through August 2009, Aggregates failed to make required contributions totaling $22,474.31. (Compl. ¶ 19; Declaration of Joseph Montelle ("Montelle Decl."), dated April 19, 2011, ¶ 6.)

Subsequently, Plaintiffs filed this action. Upon Aggregates' failure to appear in or otherwise defend this action, Plaintiffs moved for default judgment on April 12, 2011. (Dkt. No. 7.) On the same day, the Clerk of the Court noted defendant's default pursuant to Rule 55(a) of

---

[2] Citations to the "Compl." are to the Amended Complaint filed March 14, 2011. (Dkt. No. 5.) The original complaint alleged unpaid contributions from July 2010 through November 2010, which were not included in the Amended Complaint and are not a part of this motion. (*See* Dkt. No. 1.) Citations to exhibits are to those exhibits attached to plaintiffs' first set of supplemental papers. (*See* Dkt. Nos. 11-14.)

[3] Article IX of the CBA details the hourly rate schedule for contributions owed to the Funds. (Exh. A.)

2

the Federal Rules of Civil Procedure. Judge Block then referred the matter to me. To date, Aggregates has failed to appear.

## DISCUSSION

**I.     Liability**

A party's default is deemed to constitute an admission of all well-pleaded factual allegations of liability set forth in the complaint. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992). It is, however, for the court to determine whether such factual allegations establish the defaulting defendant's liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (noting that once a default has been entered a district court "need not agree that the alleged facts constitute a valid cause of action").

In this case, Plaintiffs contend that Aggregates violated Section 515 of ERISA, 29 U.S.C. § 1145, which provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement.

A plan member's contractual duty to make contributions pursuant to Section 515 is enforceable in accordance with Section 502 of ERISA under which a plan fiduciary can bring a civil action to enforce the provisions of the plan or obtain equitable relief. *See* 29 U.S.C. §§ 1132(a)(3)(B)(ii), 1132(d)(1).

Here, Plaintiffs allege that Aggregates is a party to the CBA, under which Aggregates is obligated to make contributions to the Funds, and that Aggregates has failed to make such

3

contributions from July 2009 through September 2009. Thus, Plaintiffs have established Aggregates's liability for a violation of ERISA.

## II. **Damages**

While a defendant's default is deemed to constitute an admission of all well-pleaded allegations of liability set forth in the complaint, a plaintiff must still prove he or she is entitled to damages. *See Greyhound*, 973 F.2d at 158. The court must ensure that there is a factual basis for the damages sought, and may do so either by conducting a hearing or relying on affidavits and other documentary evidence. *See* FED. R. CIV. P. 55(b); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). Here, Plaintiffs submitted: declarations by their counsel, an officer of the Union, and a funds administrator; the relevant CBA; the Funds' Policy for Collection of Delinquent Fringe Benefits (the "Collection Policy"); attorney billing statements; and shop steward reports. (Dkt. Nos. 11-14, 19.) Aggregates has not challenged the damages calculation. In light of the sufficient documentary evidence provided by Plaintiffs, a hearing in this case is not necessary. I will determine damages based on the evidence provided.

A plaintiff who has established liability under Section 515 of ERISA is entitled to an award of (1) unpaid contributions, (2) interest on unpaid contributions, (3) liquidated damages, (4) reasonable attorneys' fees and costs, and (5) such other legal and equitable relief as the court may deem appropriate. 29 U.S.C. § 1132(g)(2). In this case, Plaintiffs seek a total award of $33,106.17, which consists of: (1) $22,474.31 in unpaid contributions, (2) $3,388.00 in interest, (3) $4,494.86 in liquidated damages, and (4) $2,749.00 in attorneys' fees and costs.

A.  Unpaid Contributions

Plaintiffs seek to recover $22,474.31 in unpaid contributions. This amount is based on weekly shop steward reports maintained by the Union which indicate the number of employee hours worked.[4] (Montelle Decl. ¶ 6; Dkt. No. 19-1.) Upon review of the Funds' analysis and the shop steward reports, I find an incongruity in the reported hours.

One shop steward report indicates a total of 120 hours were worked for the week beginning July 19, 2009 for three Union employees. However, a report for the week beginning July 20, 2009 indicates 123 hours worked for the same three employees at the same job location.[5] In determining unpaid contributions, the Funds' analysis included the hours of both reports. Although a clerical error could explain this redundancy, Plaintiffs neither offered an explanation for the apparent overlapping reports, nor provided any reason to include both reports in calculating Aggregates unpaid contributions. Although the defendant has not challenged the accounting of these hours, Plaintiffs bear the burden of proving they are entitled to the amount sought. From the record before me, I can only conclude that the same week's hours were submitted twice in error by the shop steward. This mistake was compounded when the Funds Administrator included both reports in his calculation of unpaid contributions. Since all of the

---

[4] Article XII of the CBA requires Aggregates to make available to the Funds, all time sheets, payroll records, and other documents that reflect the hours and wages of Union employees. (Exh. A.) The shop steward reports used in Plaintiffs' analysis were not records provided by Aggregates since Aggregates failed to remit records of Union employees' wages and hours. These reports were created by the shop steward, a Union employee, which reflect an accounting of employee hours independent from those maintained by Aggregates.

[5] In addition, the week beginning date of another shop steward report was left blank. A spreadsheet created by Montelle and submitted with the shop steward reports indicates that this report was for the week beginning July 13, 2009. (Dkt. No. 19-2.)

reporting weeks on the shop steward reports begin on a Monday except the July 19th report, I will include the July 20th report, and exclude the July 19th report, in my calculations.

| Week of | Hours Worked (Paid) | Welfare | Pension | Annuity | Training | TOTAL |
|---|---|---|---|---|---|---|
| 8/24/2009 | 80 (80) | $1,052 | $688 | $400 | $72 | $2,212 |
| 8/17/2009 | 80 (80) | $1,052 | $688 | $400 | $72 | $2,212 |
| 8/10/2009 | 106 (107) | $1393.90 | $911.60 | $535 | $95.40 | $2,935.90 |
| 8/3/2009 | 123 (124.5) | $1,617.45 | $1,057.80 | $622.50 | $110.70 | $3,408.45 |
| 7/27/2009 | 83 (83) | $1,091.45 | $713.80 | $415 | $74.70 | $2,294.95 |
| 7/20/2009 | 123 (124.5) | $1,617.45 | $1,057.80 | $622.50 | $110.70 | $3,408.45 |
| 7/13/2009 | 16 (16) | $210.40 | $137.60 | $80 | $14.40 | $442.40 |
| 7/6/2009 | 81 (81.5) | $1,065.15 | $696.60 | $407.50 | $72.90 | $2,242.15 |
| TOTAL | | $9,099.80 | $5,951.20 | $3,482.50 | $622.80 | $19,156.30 |

Therefore, I calculate the amount of unpaid contributions as $19,156.30, and respectfully recommend Plaintiffs be awarded the same.

B. <u>Accrued Interest</u>

The CBA provides for interest on delinquent contributions to accrue at a rate of ten percent (10%) per annum. (Exh. A, Article IX § 5(a).) Applying this annual interest rate to the outstanding sum of $19,156.30 yields a per diem rate of $5.25 per day (10% of the $19,156.30 divided by 365 days). Plaintiffs calculated interest accruing from September 4, 2009 through April 7, 2011. (Montelle Decl. ¶ 8.) According to the CBA, contributions are required to be made on or before the thirty-fifth day after the close of the month in which the hours were worked. (Exh. A, Article IX § 1(a).) The delinquent contributions in this case are derived from

hours worked in July and August 2009. As such, the subject contributions became delinquent on September 4, 2009 (thirty-five days after end of July 2009) and October 5, 2009 (thirty-five days after end of August 2009). Therefore, I will calculate interest from the mid-point of these two dates—September 19, 2009—through April 7, 2011, totaling $2,808.75 ($5.25 per day for 535 days).[6]

### C. Liquidated Damages

Plaintiffs also seek $4,494.86 in liquidated damages. ERISA provides for an award of such damages equal to the greater of (1) the interest on the unpaid contributions, or (2) the amount of liquidated damages provided for under the plan not exceeding 20% of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). Plaintiffs seek liquidated damages in the amount of 20% of the total delinquent contributions. However, this amount is not provided for under the CBA's terms.

While 29 U.S.C. § 1132(g)(2)(C) requires liquidated damages to not exceed 20% of unpaid contributions, this rate is the ceiling for liquidated damages, not the default amount. *See Tr. Laborers Local Union 1298, of Nassau and Suffolk Counties, Benefits Funds v. A to E, Inc.*, No. 09-CV-3810, 2010 WL 2076092, at *1 (E.D.N.Y. May 19, 2010) (finding that ERISA does not require liquidated damages to be 20%). According to the plain terms of the CBA, liquidated

---

[6] When damages are incurred over a period of time, New York law allows for the calculation of interest from a "single reasonable intermediate date." N.Y.C.P.L.R. 5001(b); *Tr. of Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holidays, Trade Educ. Fund and 401(k) Sav. Plan v. Generation II Plumbing & Heating*, No. 07-CV-5150, 2009 WL 3188303, at *3 n.2 (E.D.N.Y. Oct. 1, 2009).

damages shall be awarded in the amount of 10% of unpaid contributions.[7] (Exh. A, Article IX § 5(c).) To support their request, Plaintiffs asserted that the Collection Policy provides for 20% of unpaid contributions in liquidated damages. (Exh. C, Art. II.) While the Collection Policy is consistent with the relief sought by Plaintiffs, it is unclear what effect it has on the plan, *i.e.* the CBA. Aggregates was not a signatory to the Collection Policy, nor does the Collection Policy appear to be incorporated by the CBA's terms.[8] Plaintiffs did not provide any information regarding whether and how the Collection Policy modified the terms of the CBA, and if so, when it went into effect. As such, Plaintiffs have failed to provide sufficient evidence for a 20% liquidated damages award. *See Masino v. Integrated Structures Corp.*, No. 10-CV-1629, 2011 WL 1343892, at *5 (E.D.N.Y. Mar. 30, 2011) (declining to award 20% liquidated damages per the collections policy because of insufficient evidence as to when the policy became effective and whether the policy could modify the original plan); *cf. Tr. Laborers Local Union 1298, of Nassau and Suffolk Counties, Benefits Funds v. Master Waterproofers, Inc.*, No. 09-CV-2649. 2010 WL 3924833, at *6 (E.D.N.Y. Aug. 20, 2010), *adopted by* 2010 WL 3909266 (applying the collections policy's liquidated damages rate when the court was provided evidence that both the

---

[7] Article IX Section 5(c) of the CBA states that the Funds are entitled to "Liquidated damages in the amount of ten (10%) percent audit costs and all amounts, fees costs, penalties and disbursements provided by statute or regulation, including but not limited to the Employee Retirement Income Security Act of 1974 as amended ("ERISA")." (Exh. A.) Taking this on its face, it is not entirely clear what the Court should calculate 10% of—unpaid contributions or audit costs and other disbursements. However, the second portion of Section 5(c) is a common "catch-all" provision in CBAs of this kind. Therefore, I interpret the CBA as providing for 10% of the unpaid contributions, and separately audit costs and other disbursements.

[8] Article IX of the CBA stipulates that the "Employer is bound by all terms and conditions of the Agreements and Declarations of Trust with respect to the [Funds]." (Exh. A, Article IX § 1(a).) It is possible that the Agreements and Declarations of Trust incorporate the Collection Policy in some way, but such documents were not provided.

8

union and employer signed off on the policy).

However, ERISA plainly provides that the court shall award the *greater* amount between the interest on the unpaid contributions and the liquidated damages provided under the CBA. 29 U.S.C. § 1132(g)(2)(C). As explained, the CBA allows for only 10% of the unpaid contributions, less than the amount of interest accrued ($1,915.63 per the CBA vs. $2,808.75 in accrued interest). Therefore, I respectfully recommend that Plaintiffs be awarded double interest $2,808.75 as liquidated damages.[9]

D. Attorneys' Fees and Costs

Plaintiffs also seek $2,264.00 in attorneys' fees and $485.00 in costs. Under the CBA, the employer must pay for costs and attorneys' fees. (Exh. A, Article IX §5(b).) Moreover, under Section 502(g)(2)(D) of ERISA, an award of reasonable attorneys' fees and costs is mandatory in an action where the plaintiff seeking to recover delinquent contributions prevails. 29 U.S.C. § 1132(g)(2)(D); *see also Labarbera v. Clestra Hauserman, Inc.*, 369 F.3d 224, 226 (2d Cir. 2004). However, the party seeking attorneys' fees must produce contemporaneous time records showing the dates, hours expended, and nature of work performed by each attorney. *N.Y.S. Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

The Second Circuit uses the "presumptively reasonable fee" requiring courts to multiply the number of hours reasonably expended by a reasonable hourly rate. *Arbor Hill Concerned*

---

[9] Although I recommend plaintiffs be awarded double interest since the CBA (from what I see) provides for liquidated damages of only 10% of unpaid contributions, I will amend my recommendation if within 7 days of this Report and Recommendation, plaintiffs submit sufficient proof and explanation as to how and when the Collection Policy modified the express terms of the CBA. *See Integrated Structures Corp.*, 2011 WL 1343892, at *5 (delaying final judgment for thirty days to allow plaintiffs an opportunity to provide supplemental briefing with respect to the efficacy of their collection policy).

*Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008); *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The presumptively reasonable fee is "the rate a paying client would be willing to pay," bearing in mind "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190; *see also Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). District courts have considerable discretion in determining the reasonable rate, but should "bear in mind *all* of the case-specific variables that . . . have [been] identified as relevant to the reasonableness of attorney's fees," including: the attorney's customary hourly rate and the experience, reputation, and ability of the attorneys. *Arbor Hill*, 522 F.3d at 186 n.3, 190 (2d Cir. 2008). In addition, courts typically use the prevailing hourly rates employed in the district where they sit. *Simmons*, 575 F.3d at 174.

In determining the reasonableness of the hours expended on a case, courts must examine the particular hours billed "with a view to the value of the work product of the specific expenditures to the client's case." *Tr. of the Rd. Carriers Local 707 Welfare Fund v. Goldberg*, No. 08-CV-0884, 2009 WL 3497493, at *9 (E.D.N.Y. Oct. 28, 2009). Courts should exclude from any award "excessive, redundant, or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see Hensley*, 461 U.S. at 434.

In support of their request for attorneys' fees, Plaintiffs have submitted their counsel's declaration, as well as an invoice containing contemporaneous time records identifying the dates, rates, hours spent, and work performed by Virginia & Ambinder. (Declaration of Charles R. Virginia ("Virginia Decl."), dated Apr. 27, 2011; Exh. B.) The invoice shows that 12.1 hours (10.8 attorney hours, 1.3 paralegal hours) were spent litigating this ERISA default judgment.

The time was spent primarily drafting and filing the complaint and drafting and reviewing documents to support default judgment. Such use of time was not excessive, redundant, or otherwise inappropriate.

For their work on this case, the firm charged $200 per hour for Kenneth Marx and Judy Wong, firm associates,[10] and $80 per hour for legal assistants. (Virginia Decl. ¶¶ 6, 7.) Having reviewed the rates approved in comparable cases, I find that the rates charged for both the associates and legal assistants are reasonable for a total of $2,264 in legal fees for associates ($200 per hour for 10.8 hours and $80 per hour for 1.3 hours). *See, e.g.*, *Tr. of Plumbers Local Union No. 1 Welfare Fund v. William J. Kennedy Plumbing, Inc.*, No. 08-CV-3939, 2010 WL 1265197, at *4 (E.D.N.Y. Feb. 18, 2010), *adopted by* 2010 WL 1269770 (finding that a $200 per hour rate for associates and an $80 per hour rate for paralegal services were typical for an ERISA default action); *Finkel v. Jones Lang LaSalle Americas, Inc.*, No. 08-CV-2333, 2009 WL 5172869, at *5 (E.D.N.Y. Dec. 30, 2009) (hourly rates of $235–$225 for associates and $80 for paralegals were reasonable for a default ERISA case).

Plaintiffs also seek $485 in costs, consisting of the $350 court filing fee and the $135 in service of process fees. (Exh. B.) In a successful action to recover delinquent contributions, an award of reasonable costs is mandatory, and courts generally award "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients." *Goldberg*, 2009 WL 3497493, at *10; *see also* 29 U.S.C. § 1132(g)(2)(D). Court filing fees and expenses associated with service of process have been deemed reasonable within the Eastern District of New York. *See, e.g.*, *Finkel v. Rico Elec., Inc.*, No. 07-CV-2145, 2009 WL 3367057, at *8 (E.D.N.Y. Oct.

---

[10] Judy Wong has since left Virginia & Ambinder.

16, 2009) (awarding, among other costs, filing, and service of process fees).  As such, Plaintiffs' request for $485 in costs is reasonable.  Accordingly, I respectfully recommend an award of $2,749 in attorneys' fees and costs.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that default judgment be entered against Aggregates Plus Ltd. in the amount of $27,522.80, comprised of:

(1) $19,156.30 in delinquent contributions,

(2) $2,808.75 in accrued interest,

(3) $2,808.75 in liquidated damages,

(4) $2,749 in attorneys' fees and costs.

Any objections to the recommendations made in this Report and Recommendation ("R&R") must be filed with the Clerk of the Court and the Chambers of the Honorable Frederic Block within fourteen days of receiving this R&R.  Failure to file timely objections may waive the right to appeal the District Court's Order.  *See* 28 U.S.C. § 636(b)(1)(c); FED R. CIV. P. 6(e), 72; *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).  Plaintiffs are hereby directed to serve copies of this R&R on Aggregates and to file proof of service within two business days.

Dated: August 2, 2011
 Brooklyn, New York

*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**